Herbert, J.,
dissenting. It seems advisable in this dissent to discuss not only the paragraphs of the syllabus as they are stated but also some of the statements in the opinion supporting the paragraphs.
Examining the first three paragraphs of the syllabus, they contain statements of established principles which are not in dispute in this case and which answer no question now raised here; therefore, I neither concur nor dissent as to them.
The basic issue here appears to me to lie in the treatment given by the majority of the Court of Appeals to the second sentence of paragraph two of the syllabus in the earlier Curtiss case (Curtiss v. City of Cleveland, 166 Ohio St., 509, 144 N. E. [2d], 177), when that case was remanded to that court, and their construction and application of that sentence-. Judge Hurd, in his dissenting opinion in the Court of Appeals, sums up exactly my view of this case as it is now presented here where he states at the opening of his dissent that he considers the judgment of the majority in the Court of Appeals irreconcilable with the opinion and judgment of this court in the previous Curtiss case.
The opinion of the majority and the journal entry in the Court of Appeals appear to the writer to be an excellent exercise in semantics but an unconvincing exposition of law. The second paragraph of the journal entry below states:
“And this court, having further heard and reconsidered said cause and all evidence and proceedings therein and concluding that its findings of fact and conclusions of law in. said former hearing were correct, paragraphs 10, 25, 26 and 27 of which are hereby specifically adopted, approved and ratified, *135 and this court now enters judgment and decree in accordance therewith, except as otherwise directed by the mandate issued, by the Stipreme Court, as aforesaid.” (Emphasis added.)
The majority then proceed to adopt the further finding, as proposed by the plaintiff and cross-petitioning defendant (see dissent of Hurd, J., below), that:
‘ ‘ This court, upon reconsideration of all the evidence in the case finds that within the law as stated in the Supreme Court opinion, the amendatory ordinances which are the subject of the litigation in this case, when applied to the properties herein-before listed are confiscatory, unreasonable and discriminatory and without relation to the public health, safety, morals or general welfare and are unconstitutional as to these properties.”
Going on further, the appellate court specifically found and adjudged “that those who had expended capital in acquiring and substantially improving lands for retail business in reliance upon and in conformity with the zoning ordinance in effect prior to the enactment of the amendatory ordinances were not entitled to rely upon the continuance of such prior ordinance. ’ ’
In this manner, the majority of the Court of Appeals, without considering any new evidence whatever but solely on the previous record, adhered to their previous findings and at the same time disclaimed in the words quoted above the reliance theory which bottomed their original decision. In my view, the majority opinion of the Court of Appeals is tailored to meet the second sentence of the second paragraph of this court’s syllabus in the earlier Curtiss case while it disregards utterly the first portion of the first sentence of that paragraph.
In the early part of the majority opinion here, reference is made to the first portion of the first sentence of paragraph two of the syllabus in the earlier Curtiss case to the effect that actual or potential loss in value resulting from the rezoning of substantially improved lands does not of itself render an amendatory zoning ordinance invalid.
The opinion continues: “We did not say that such loss in value is not an important factor to be considered in determining whether such rezoning ordinance is unreasonable or arbitrary.” With that statement I agree, but may I add that we did not say *136 in either the earlier opinion or the syllabus that such loss in value is an important factor to be considered, and it is not so stated in the syllabus in this case.
The speculation in the paragraph immediately following this quoted statement in the majority opinion also seems to me to shed no light on the situation which now confronts us, namely, whether new evidence is required. The opinion then follows with the statement unsupported by the syllabus that “the fact that owners have substantially improved their lands for a use, lawful at the time they have so improved them * * * is always an important factor in determining the validity of subsequent zoning legislation providing against such use,” citing as authority the case of City of Akron v. Chapman, 160 Ohio St., 382, 116 N. E. (2d), 697, 42 A. L. R. (2d), 1140. In the Akron case, it was held, in effect, that the ordinance involved did not adequately provide for continuing a nonconforming use. Of course, the amendatory ordinances under consideration here have the usual full provisions for the continuance of a nonconforming use.
Going to the fourth paragraph of the syllabus, I am simply unable to understand the meaning of the statement there expressed. How does one weigh “the benefit to the public health, safety, morals or general welfare” as compared with “the loss to the landowner”! The majority opinion stresses the apparent financial loss in the foot-front value of the land as testified to by witnesses in the original trial, but I am unable to find any standards set out in the syllabus or in the majority opinion by which the public benefit can be weighed against the financial loss to the landowner.
My comments as to paragraph four are also applicable to paragraph five of the syllabus. I fail to see how “any such benefit may be lessened by the facts that a substantial part of the property being zoned has previously been used for uses other than those permitted by the zoning legislation,” and I say this regardless of whether “very little” or much “of such property has previously been used for uses permitted by such legislation.” In effect, these two paragraphs (four and five) greatly weaken if they do not completely invalidate the first portion of the first sentence of paragraph two of the syllabus *137 in the earlier Curtiss decision and tend to restore respectability to the reliance theory which the earlier decision struck down.
The majority opinion cites the case of East Fairfield Coal Co. v. Booth, Zoning Inspr., 166 Ohio St., 379, 143 N. E. (2d), 309, and also the case of State, ex rel. Killeen Realty Co., v. City of East Cleveland, 169 Ohio St., 375, 160 N. E. (2d), 1, as authority to support these fourth and fifth paragraphs of this syllabus.
In the East Fairfield Coal qase, there was an attempt by a township zoning commission to completely forbid strip mining in a rural farming area. I can find nothing in the per curiam opinion in that case to support the fourth or fifth paragraphs of the syllabus here. Nor can I see the applicability of the decision in the Killeen case to the facts in the case before us now. In fact, the third paragraph of the syllabus in the Killeen case refutes the necessity of paragraph six of the syllabus here. It is there stated:
“Where a municipality’s zoning ordinances authorize the granting of a variance in hardship cases, where it is shown that a proposed use of the land in question is in harmony with the needs and nature of the community, and where no economically feasible use of such land may be made under the existing zone designation, it is an abuse of discretion on the part of the municipality’s officials possessing the discretionary power to do so to refuse to grant a variance.”
Judge Hurd, in his dissent from the majority decision here under review, states:
“It is entirely conceivable that, in a specific ease where unnecessary hardship is shown, the Zoning Board of Appeals, upon application made, would grant such an aplication for an extension of a nonconforming use or for a variance, in which event the interested parties enjoying nonconforming uses would have no cause for complaint. If, on the other hand, such an application should be refused, appeal could then be made to the courts. However, until such a contingency occurs, the plaintiff and cross-petitioning appellees have no grievance for which a remedy must be afforded by judicial decree.”
Apparently, the sixth paragraph of the syllabus presented here is intended to meet and vitiate the above-quoted statement *138 of Judge Hurd. In nay view, this statement in the sixth paragraph is extraneous to the issue presented to us. It is an undisputed fact that the Cleveland ordinances at issue here contain all the provisions which recognize the right of nonconforming landowners to relief even to an appeal to the courts in order to avoid any hardship to them at a later time. It is also undisputed that the appellees involved in this case have full rights as nonconforming users to continue exactly as they wish as long as they wish.
The majority opinion of the Court of Appeals cites and quotes Section 713.15, Bevised Code, passed by the Legislature in 1957, effective shortly after our earlier Curtiss decision. While the opinion holds that the ordinances which are the subject of this action are now in direct conflict with this recently enacted section “and therefore now inoperative as to these properties,” this holding is not carried into the journal entry of the Court of Appeals and, therefore, is not part of its decision to be considered here.
Summing up the situation here, the legislative arm of the city of Cleveland passed amendatory ordinances designed to prevent any further enhancement of the traffic congestion problem in that area of Lake Shore Boulevard, a recognized artery for through traffic in that part of Cleveland. Of course, the uses made nonconforming by the amendatory ordinances have been fully protected in the usual manner heretofore approved by this court.
I thought then and still do that all the issues raised in the previous review of this cause were settled so far as the earlier record was concerned and the cause was remanded to the Court of Appeals to take new testimony with reference to the principles enunciated in the second sentence of the second paragraph of the earlier syllabus.
I can only conclude, therefore, as did Judge Hurd in his dissent below, that, “since the present ordinance provides a method of procedure to obtain relief in individual cases and since the Bevised Code, by its terms, protects those enjoying nonconforming uses from loss due to destruction by fire or otherwise, and also provides for an extension of nonconforming uses on reasonable terms, and since there is no new or additional *139 evidence upon which to predicate the majority opinion, it must be concluded, in the light of the [earlier] decision of the Supreme Court in this case, and in the light of the legislative enactment, that there is no evidence before this court which would justify the conclusion that the amendatory zoning ordinances, as applied to the properties improved with retail business, are invalid or unconstitutional as a matter of fact.”